IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARGARET B.,[1]

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant.

Case No. 6:19-cv-01831-CL

**OPINION AND ORDER**

---

**CLARKE, Magistrate Judge.**

Margaret B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. Id. Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

I.   **PLAINTIFF'S APPLICATION**

Plaintiff filed her application for DIB on June 8, 2015, alleging disability as of March 13, 2015, due to degenerative disc disease and depression. (Tr. 19, 167, 187.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 63, 80.) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 16, 2018. (Tr. 36-62.) Following the administrative hearing, ALJ Rudolph Murgo issued a written decision dated August 6, 2018, denying Plaintiff's application. (Tr. 19-30.) The Appeals Council denied

PAGE 2 – OPINION AND ORDER

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. Id. at 724-25. The claimant bears the burden of proof for the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. Id.; Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. Bustamante, 262 F.3d at 954 (citations omitted).

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 19-30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial

PAGE 3 – OPINION AND ORDER

gainful activity since her alleged onset date of March 13, 2015. (Tr. 21.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease, depression, anxiety, somatoforin, and substance use disorder. (Tr. 21.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a Listing. (Tr. 21.)

The ALJ then determined Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff retained the ability to perform medium work with the following limitations:

> [Plaintiff can frequently use] stairs, ropes, ladders, [and] scaffolds, [and frequently] stoop, kneel, crouch, and crawl; [she] is capable of understanding and remembering simple and complex tasks but she does not have the ability to sustain attention and persist in complex tasks or duties that require multi-tasking. She is capable of sustaining attention and persisting on 3-4 step tasks, i.e. semi-skilled tasks.

(Tr. 23.)

At step four, the ALJ found that Plaintiff could perform her past relevant work. (Tr. 28.) At step five, the ALJ determined that, in the alternative, Plaintiff could perform jobs existing in significant numbers in the national economy, including billing clerk and procurement clerk. (Tr. 29.) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 30.)

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion evidence; and (2) violating her rights under the Appointments Clause.

## DISCUSSION

### I.  MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ improperly weighted the opinions of Mary Miller, ARNP, Jonathan Harrison, M.D., Susan Moner, M.D., Ben Kessler, Psy.D., and Bill Hennings, Ph.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is

PAGE 4 – OPINION AND ORDER

contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**1. Mary Miller, ARNP**

ARNP Miller completed three medical forms assessing Plaintiff's physical limitations in December 2015. Ms. Miller opined that Plaintiff could not lift more than 10 pounds; could sit for two hours; could stand and walk for 30 minutes at a time; was limited in reaching; and would be absent from work 3-4 times each month due to her symptoms. (Tr. 27, 345-46.) Ms. Miller reiterated these findings in April 2016 and added mental limitations including marked limitations in carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workweek without interruptions from psychologically based symptoms;

PAGE 5 – OPINION AND ORDER

performing at a consistent pace with a standard number and length of rest periods; and would be absent from work 3 days per month. (Tr. 356-57.) Ms. Miller opined that Plaintiff was incapable of sustaining full-time work due to her limitations.

The ALJ rejected Ms. Miller's opinion. (Tr. 27.) First, the ALJ noted that Ms. Miller did not provide objective support for her opinions, which were contradicted by the treatment record. (Tr. 27.) Contradictions between a provider's opinion and her clinical notes "is a clear and convincing reason for not relying on the doctor's opinion." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, treatment notes reveal that Ms. Miller observed Plaintiff walking normally and did not observe any muscle atrophy. (Tr. 468, 493.) As to Plaintiff's psychological symptoms, Ms. Miller rarely observed Plaintiff to be in distress. Ms. Miller's observations were also contradicted by the longitudinal record, which revealed that Plaintiff sought routine, conservative treatment for her limitations, and did not seek out specialists for evaluation or treatment. (Tr. 27.) While Plaintiff now argues that her failure to seek more specialized treatment was due to her financial situation, Plaintiff did not testify to this at the hearing, and in fact told the ALJ that she had medical insurance. (Tr. 42.) On this record, both Ms. Miller's own treatment notes and the longitudinal record contradict Ms. Miller's conclusions that Plaintiff suffered from extreme limitations that would make her unable to perform substantial gainful activity. The ALJ therefore provided a clear and convincing reason to reject Ms. Miller's opinion that was supported by substantial evidence in the record. Bayliss, 427 F.3d at 1216.

**2. Other Medical Opinion Evidence**

Plaintiff also argues that the ALJ improperly weighted the medical opinions of Jonathan Harrison, M.D., Susan Moner, M.D., Ben Kessler, Psy.D., and Bill Hennings, Ph.D. Specifically, Plaintiff argues that in giving great weight to and relying upon these opinions, the ALJ

mischaracterized the evidence of record to formulate an unsupported RFC. The Court rejects this argument. The Commissioner's regulations require the ALJ to give more weight to an opinion that aligns with the overall record. 20 C.F.R. 404.1527(c)(4). Here, the ALJ reasonably interpreted these physicians' findings, noting that Dr. Harrison and Dr. Moner's opinions were supported by clinical findings and consistent with the objective evidence including Plaintiff's medical imaging studies, and her daily activities, conservative treatment, and relatively stable pain symptoms. Similarly, Dr. Kessler and Dr. Hennings's opinions were consistent with record evidence of Plaintiff's mental functioning, routine and conservative treatment, and activities of daily living, as discussed above. (Tr. 27.) On this record, the ALJ's evaluation of the medical record was rationally based upon the record and free of harmful error.

## II.   APPOINTMENTS CLAUSE CHALLENGE

Plaintiff also contends that remand is warranted because her claims was adjudicated by "an unconstitutionally appointed ALJ." The Court rejects this argument. Here, Plaintiff was afforded a hearing with an ALJ that was appointed by the Acting Commissioner on the same day as Plaintiff's administrative hearing. (Tr. 36-62.) The Commissioner of Social Security ratified the ALJ's appointment and approved it as her own under the Constitution on July 16, 2018, the same day as Plaintiff's hearing. 84 Fed. Reg. 9583, 9583 (Mar. 15, 2019). The Office of Personnel Management's General Instructions for Processing Personnel Actions provide that "[u]nless otherwise indicated on the Notification of Personnel Action, separations, actions to terminate grade and pay retention, and Opt Out Phased Employment/Retirement actions are effective at the end of the day (midnight)," but "all other actions are effective at the beginning of the day (12:01 a.m.)." An appointment like the ALJ's appointment by the Acting Commissioner thus falls into the category of "all other actions." See Michael A. Saul, No. 5:19-cv-00751-DJS (N.D.N.Y. July 15,

PAGE 7 – OPINION AND ORDER

2020) (finding Office of Personnel Management instructive directive of 12:01 a.m. instructive in the absence of any authority to the contrary). On this record, because the ALJ was properly appointed under the Constitution effective 12:01 a.m. on the date of Plaintiff's administrative hearing, Plaintiff's Appointments Clause challenge lacks merit.

## CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED this **1** day of ~~September~~ October, 2021.

_____
MARK CLARKE
United States Magistrate Judge